**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

LOUIS CHIRICO,

                Plaintiff,

      v.

BOROUGH OF DELAWARE WATER
GAP, et al.,

               Defendant.

CIVIL ACTION NO. 3:23-CV-00912

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court is a motion to dismiss filed by Defendants Borough of Delaware Water Gap ("the Borough") and Jaime Levy ("Defendant Levy") (collectively, "Defendants") filed on December 4, 2023. (Doc. 13). Plaintiff Louis Chirico ("Chirico") initiated this civil rights action by filing a complaint on June 4, 2023, and an amended complaint on November 20, 2023. (Doc. 1; Doc. 10). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 7). For the following reasons, Defendants motion to dismiss with be **DENIED IN PART** and **GRANTED IN PART**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

    A.  CHIRICO'S SEVERE HEARING LOSS

The following factual summary is taken from Chirico's amended complaint. (Doc. 10). Chirico is a 67-year-old man and a 23-year veteran of the Armed Forces. (Doc. 10, ¶¶ 21, 22). He suffered severe auditory loss during his time in the Armed Forces. (Doc. 10, ¶¶ 21, 22). According to Chirico, his hearing loss substantially limits his major life activities. (Doc. 10, ¶

67). As a result of what he identifies as his disability, Chirico speaks very loudly. (Doc. 10, ¶¶ 22, 67).

### B. CHIRICO AND THE BOROUGH'S POLICE DEPARTMENT

Chirico began working at the Borough's Police Department ("the Department") around March 2020 as a part-time policeman. (Doc. 10, ¶ 24). During his time there, the Department was comprised of approximately four police officers who were all aware of Chirico's severe hearing loss and its effects. (Doc. 10, ¶¶ 22-23). According to Chirico, he was well qualified for the position and performed well. (Doc. 10, ¶ 25). Police Chief Andy Yakibuk ("Chief Yakibuk") was head of the Department during Chirico's employment. (Doc. 10, ¶¶ 28, 30). The Department took orders and direction solely from the Mayor's office and reported directly thereto. (Doc. 19, ¶ 32). Notable for the purpose of this action, the Department did not report to the Borough's Council ("the Council"). (Doc. 10, ¶ 32).

### C. THE ALISON TROTTER INCIDENT

An incident at the Department involving Chirico's severe hearing loss took place in March 2022. (Doc. 10, ¶ 35). Chirico had observed the Council's secretary, Allison Trotter ("Trotter"), in the Department when none of the officers were present. (Doc. 10, ¶ 35). As a civilian, she was not permitted to be there. (Doc. 10, ¶ 35). Chirico called Trotter to inform her of this fact. (Doc. 10, ¶ 35). Chirico believes that after their conversation, Trotter told others that he had yelled at her, despite having known about his hearing loss. (Doc. 10, ¶ 36). Then, for about a week after the incident, Trotter refused to answer any of Chirico's calls. (Doc. 10, ¶ 37). During this time, Chirico called her multiple times for information about his annual firearms qualifications that needed to be completed. (Doc. 10, ¶ 37). Because Trotter would not answer his calls, Chirico's firearms renewal was delayed. (Doc. 10, ¶ 38).

### D. HARASSMENT FROM JAIME LEVY

During his campaign for political office, Defendant Levy seemingly attempted to bribe police officers through his wife by giving each a check, stating that it was a thank you for their good work. (Doc. 10, ¶ 27). The officers refused to cash the check. (Doc. 10, ¶ 28). Along with Chief Yakibuk, Chirico reported the bribery to the Borough's Mayor, Larry Freshcorn ("the Mayor"), who advised the officers to report it to the County's District Attorney's Office. (Doc. 10, ¶ 28). Accordingly, the officers reported the alleged bribery to the District Attorney's office and were instructed to return the checks to Defendant Levy. (Doc. 10, ¶ 29). No further action was taken. (Doc. 10, ¶ 29).

In or around November 2021, Defendant Levy was elected to the Borough's Council. (Doc. 10, ¶ 26). Defendant Levy took office in January 2022 and was subsequently voted to be the Council's President. (Doc. 10, ¶ 26). After Defendant Levy's election to the Borough's Council, Defendant Levy began to target Chirico and Chief Yakibuk, the two eldest police officers in the Department. (Doc. 10, ¶ 30). He did so by micromanaging the Department and questioning Chief Yakibuk about Chirico's work. (Doc. 10, ¶ 31). According to Chirico, within approximately two weeks of joining the Council, Defendant Levy, with the support of Lauren Chamberlain who is Chair of the Borough's Economic Development Committee, interfered with Chirico's ability to do his job. (Doc. 10, ¶ 34). Despite having no authority to do so, Defendant Levy told Chirico that he could not respond to a call regarding a possible domestic incident that required police presence. (Doc. 10, ¶ 34).

After the phone incident, Trotter reported to Defendant Levy that Chirico had yelled at her. (Doc. 10, ¶¶ 36, 39). The two then accused Chirico of stealing time and Defendant Levy allegedly "made statements to others that he was tracking [Chirico's] time because he

knew [Chirico] was stealing time." (Doc. 10, ¶¶ 31, 39). In response, Chirico submitted a timesheet that reflected he was completing mandatory updates from home. (Doc. 10, ¶ 39). Then, Defendant Levy "took his accusation to the next level by publishing an article in the Borough's newsletter that the Department was ineffective because it had officers working from home." (Doc. 10, ¶ 40). Upon Chirico's information and belief, the younger police officers at the Department were not subjected to such scrutiny and questioning. (Doc. 10, ¶ 33).

According to Chirico, Defendant Levy's behavior became "became so harassing and pervasive that [Chirico] was fearful that he would face unwarranted discipline." (Doc. 10, ¶ 41). Chirico became so stressed "that his heart condition was aggravated, and Chirico suffered a heart attack which resulted in stents being placed in his arteries. Chirico was in the hospital for approximately one week before being discharged." (Doc. 10, ¶ 42). Defendants were notified about Chirico's heart attack and his admission to the hospital, however, Defendant Levy persisted with his bullying, even allegedly telling others that he did not want Chirico to survive. (Doc. 10, ¶ 43). Given the harassment he faced at work, Chirico "was forced to resign by retiring earlier than he had anticipated." (Doc. 10, ¶ 46). Because of Defendant Levy's harassment, Chief Yakibuk was also forced to resign. (Doc. 10, ¶ 44). Defendants hired a younger chief to replace Chief Yakibuk and a younger officer, believed to be in his mid-fifties, to replace Chirico. (Doc. 10, ¶¶ 47, 48).

### E.  EXHAUSTION OF REMEDIES

Chirico asserts he exhausted his administrative remedies under the ADA, the ADEA, and the PHRA. (Doc. 10, ¶ 13). Chirico timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging retaliation,

disability, and age discrimination against Defendants. (Doc. 10, ¶ 14). This charge, assigned Charge Number 530-2023-02903, was also filed with the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 10, ¶ 15). On March 8, 2023, Chirico received notice that the EEOC issued him a Dismissal and Notice of Rights ("Right to Sue") dated March 6, 2023. (Doc. 10, ¶ 16). Chirico notified the EEOC of his intent to proceed with this lawsuit in federal court. (Doc. 10, ¶ 17). He then filed the instant amended complaint within ninety days of receiving his Right to Sue. (Doc. 10, ¶ 18).

## II.   PROCEDURAL BACKGROUND

On June 4, 2022, Chirico initiated this action with the filing of a complaint against the Defendants pursuant to the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Pennsylvania Whistleblower Act. (Doc. 1). On October 3, 2023, Defendants filed a motion to dismiss for failure to state a claim. (Doc. 8). In response, Chirico filed the amended complaint on November 20, 2023. (Doc. 10). In the amended complaint, Chirico asserts the following causes of action: Count I –Age Discrimination in violation of the Age Discrimination in Employment Act (Doc. 10, ¶¶ 50-57); Count II – Age Discrimination in violation of the Pennsylvania Human Relations Act (Doc. 10, ¶¶ 58-65); Count III – Disability Discrimination in violation of the Americans with Disabilities Act of 1990, as amended (Doc. 10, ¶¶ 66-75); Count IV – Disability Discrimination in violation of the Pennsylvania Human Relations Act (Doc. 10, ¶¶ 75-85); and Count V – Retaliation in violation of Title VII (Doc. 10, ¶¶ 86-89).

On December 4, 2023, Defendants filed a motion to dismiss and a brief in support. (Doc. 13; Doc. 14). On January 15, 2024, Chirico filed a brief in opposition and an exhibit.[1] (Doc. 16; Doc. 17; Doc. 17-1; Doc. 18). On January 29, 2024, Defendants filed a reply brief. (Doc. 19). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 13; Doc. 14; Doc. 17-1; Doc. 18; Doc. 19).

III.   **STANDARD OF LAW**

A.   MOTION TO DISMISS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and

---

[1] Chirico's brief in opposition was improperly filed twice as a reply brief. (Doc. 16; Doc. 17). At the request of the clerk, Chirico properly re-filed his brief as a brief in opposition on January 17, 2024. (Doc. 18).

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347. The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit

a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

IV.  **DISCUSSION**

 A.  TIMELINESS OF CHIRICO'S BRIEF IN OPPOSITION

Chirico's brief in opposition is untimely because it was filed forty-two days after Defendants filed their motion to dismiss. (Doc. 16; Doc. 17); *see* M.D. LR 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief. . . ."). Accordingly, Defendants argue Chirico's brief in opposition should be struck. (Doc. 19, at 1-2).

The Court will not strike Chirico's brief in opposition as untimely filed. Under Rule 6(b) of the Federal Rules of Civil Procedure, a district court may extend a deadline "for good cause . . . with or without motion if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(2)(A). "[A]ny *post* deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990) (emphasis in original). The Supreme Court stated that the determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These circumstances include: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs.*, 507 U.S. at 395.

Here, the Court justifiably finds good cause to extend Chirico's filing deadline. While Chirico filed his brief in opposition forty-two days after the filing deadline, the docket reveals that Chirico's original attorney, Andrew Lacy, Jr., withdrew as counsel on December 12, 2023. (Doc. 15). This was just one week before Chirico's filing deadline. On January 15, 2024, attorney Patrice Tisdale filed two identical briefs in opposition, incorrectly filed as reply briefs, on behalf of Chirico. (Doc. 16; Doc. 17).

When considering all relevant circumstances surrounding Chirico's omission, the Court finds that there is little danger of prejudice to Defendants, the length of the delay is fairly limited, and there is nothing to suggest that Chirico has acted in bad faith. It is likely his change in counsel is responsible for the untimely filing. Taking into account the potential prejudice Chirico would face, his change in counsel, and the Supreme Court's instruction that "the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits," the Court will decline to strike Chirico's brief in opposition as untimely. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988).

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE PHRA

Defendants argue that Chirico has failed to exhaust his administrative remedies under the PHRA because he "failed to check the box in the upper corner of the Charge document indicating that it should be dual-filed." (Doc. 14, at 10-11; Doc. 17-1); *see* 42 U.S.C. §§ 2000e-5(e), (f)(1); *see Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-27 (3d Cir. 1997). (explaining that a plaintiff must indicate that they want their EEOC charge dual filed with the PHRC). To support their argument, Defendants provide that "while charges dual-filed with the EEOC and PHRC typically receive a case number from each agency, [Chirico] references only an

EEOC charge number" in his amended complaint. (Doc. 14, at 11). Pointing to his attached

EEOC Charge of Discrimination, Chirico counters:

> Defendants' look at the upper right-hand corner of the Charge. Defendants' focus on that corner has led them to miss Mr. Chirico's inclusion of PHRC in the very next box which asks for the State or Local Agency, in addition to the EEOC, where the charge is presented. . . and the last second to last row of the charging document which states: "I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures."

> (Doc. 17-1; Doc. 18, at 8).

The parties do not dispute that Chirico filed a charge of discrimination with the EEOC,

which is attached to Chirico's motion brief in opposition as an exhibit.[2] (Doc. 17-1). Parties

disagree as to whether Chirico's charge sufficiently indicated his desire to dual-file his charge

with the PHRC. (Doc. 14, at 11; Doc. 18, at 8-9). "Whether a plaintiff has initiated PHRC

proceedings under the PHRA is a state law issue." *Woodson*, 109 F.3d at 926-27. To bring suit

under the PHRA, a plaintiff must first file an administrative complaint with the PHRC within

180 days of the alleged discrimination. *Woodson*, 109 F.3d at 924. If Defendants are correct in

asserting that Chirico has failed to initiate proceedings under the PHRA, Chirico would be

precluded from seeking remedies under the PHRA, as this requirement has been strictly

upheld by Pennsylvania courts and the Third Circuit. *Woodson*, 109 F.3d at 924-25 (citing

*Vincent v. Fuller Co.*, 616 A.2d 969, 974 (1992) to add "persons with claims that are cognizable

---

[2] Chirico attached a copy of his EEOC charge as an exhibit to his brief in opposition. (Doc. 17-1). Defendants do not contest the validity of this charging document, and the Court may consider it here. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (indicating that a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment).

under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.").

The EEOC and the PHRC "have entered into an agreement through which they have apportioned initial jurisdiction over discrimination complaints in order to avoid unnecessary duplication of investigatory time and effort. Under this agreement, each agency waives its right to initially review claims that are first filed with *the other agency." *Woodson*, 109 F.3d at 925-26. This agreement, however, does not result in the automatic filing of a claim with the PHRC whenever an EEOC claim is filed. *Woodson*, 109 F.3d at 926. To initiate PHRC proceedings as required by the PHRA, the claimant must abide by the PHRA's filing requirements. *Woodson*, 109 F.3d at 926. This means that a claimant must either request the EEOC dually file their charge with the PHRC or file an independent complaint with the PHRA. *Woodson*, 109 F.3d at 924-27; *see Wertz v. GEA Heat Exchangers Inc.*, No. 1:14-CV-01991, 2015 WL 3581227, at *3 (M.D. Pa. June 5, 2015). Accordingly, "[a]s a general matter, therefore, if the PHRC does not receive a complainant's claim, then that complainant cannot bring suit under the PHRA." *Woodson*, 109 F.3d at 927.

In this case, while Chirico did not check "the upper right hand quarter corner of the Charge," he did include the statement: "I want this charge filed with both the EEOC and the State or local Agency, if any[,]" in the last second to last row of his charging document. (Doc. 17; Doc. 18, at 8). In the top center of the document, he also typed in "Pennsylvania Human Relations Commission," in the "State or Local Agency, if any" box. (Doc. 17-1). In doing so, Chirico sufficiently requested that his charge be dual-filed. *See Kuhn v. Oehme Carrier Corp.*, 255 F. Supp. 2d 458 (E.D. Pa. 2003) (finding plaintiff had dual-filed her EEOC and PHRC claim where she forgot to check the box on the EEOC form but wrote in the local Human

Rights Commission in the "State or Local Agency, if any" box. The court highlighted the fact that the plaintiff received a right to sue notice from both the EEOC and the local agency.). However, it is unclear at this point whether the PHRC has received Chirico's complaint and initiated proceedings on his behalf. Accordingly, the Court will decline to dismiss Chirico's PHRA claims at this time as there are still questions surrounding whether Chirico adequately exhausted his administrative remedies in accordance with the requirements of the PHRA. *See Weems v. Kehe Food Distributors, Inc.*, 804 F. Supp. 2d 339 (E.D. Pa. 2011) (declining to dismiss PHRA claims at the motion to dismiss stage of litigation, deeming it would be premature due to unresolved questions).

### C.  CLAIMS AGAINST LEVY IN HIS OFFICIAL CAPACITY

Defendants argue that Chirico's claims against Levy, made against him in his official capacity, merge with those against the Borough. (Doc. 14, at 12; Doc. 19, at 5-6). Chirico does not respond to this argument in his brief in opposition. (Doc. 18). While actions brought against a government official in his or her individual or personal capacity seek to impose liability on the government official for actions he takes under the color of state law, official capacity actions represent another way to sue the municipality of which the officer is an agent. *See Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.1988) (stating claims against a government official in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent ..."); *see also Swedron v. Borough*, No. 08CV1095, 2008 WL 5051399, at *4 (W.D. Pa. Nov. 21, 2008) (explaining the relationship between a claim against a government official and a claim against a municipality). Chirico's claims against Defendant Levy in his official capacity are thus to be treated as claims against his co-Defendant, the Borough. *See Mitros v. Borough of Glenolden*, 170 F. Supp. 2d 504, 506

(E.D. Pa. 2001) (providing that suits brought against municipal officials in their official capacities are treated as suits brought against the governmental unit of which they are officials). To avoid moving this litigation forward with redundant claims, the Court will **DISMISS** claims against Levy in his official capacity.

D. AGE DISCRIMINATION CLAIMS

Defendants aver that Chirico has not plausibly alleged a claim for age discrimination under the ADEA or PHRA. Defendants argue that "[g]iven [Chirico's] failure to provide even basic details regarding the substance of [his alleged discriminatory] incidents or when they occurred, Defendants do not have fair notice of the events at issue and are instead left to guess at the interactions forming the grounds of [Chirico's] Amended Complaint." (Doc. 14, at 14-15). Chirico maintains that he satisfied the pleading requirements to allege he was discriminated against because of his age. (Doc. 18, at 7-8).

To state a claim for age discrimination, Chirico must allege that (1) he is 40 years of age or older; (2) the Borough took an adverse employment action against him; (3) he was qualified for the position in question; and (4) he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir.2013). "To survive a motion to dismiss in an employment discrimination context, a complaint must present factual allegations that would 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]' of the prima facie case." *White v. FedEx Corp.*, No. 1:19-CV-00325, 2019 WL 5102168, at *2 (M.D. Pa. Oct. 11, 2019) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)) (brackets in original).

Here, Chirico has satisfied elements one, three, and four of his age discrimination

claims by alleging that he is sixty-seven, over forty years of age, he was qualified for the position from which he was terminated, and that after his departure, he was replaced by an officer who was over ten years younger than Chirico, in his fifties. (Doc. 10, ¶¶ 51, 52, 53); *See Briggs v. Temple University*, 339 F.Supp.3d 466, 490 (E.D. Pa. 2018) (finding thirteen year age gap between a 59 year old and a 46 year old employee sufficient to establish *prima facie* claim of age discrimination). The issue is whether Chirico has adequately alleged he suffered an adverse action. An adverse employment action occurs when an employer "discharges, refuses to hire, or makes a decision that is serious enough to alter the employee's compensation, terms, conditions, or privileges of employment." *Grossberg v. Hudson Cnty. Dep't of Hum. Servs.*, 740 F. App'x 762, 764 (3d Cir. 2018) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997); 42 U.S.C. § 2000e-2(e)). In his amended complaint, Chirico avers "Defendants created such a hostile and harassing work environment that Plaintiff was forced to resign before his intended date of retirement." (Doc. 10, ¶ 64). In essence, Chirico alleges he was constructively discharged.

Retirement is typically not an adverse employment action unless an employee alleges facts supporting the retirement's involuntary nature. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). "A retirement may be considered a constructive discharge—and, thus, an adverse employment action—when the plaintiff alleges facts to support the notion that the 'employer knowingly permit[ted] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Gross v. Hatboro-Horsham Sch. Dist.*, No. CV 23-0633, 2023 WL 4867423, at *7 (E.D. Pa. July 31, 2023) (citing *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (internal citations omitted)). According to the Third Circuit, a constructive discharge may occur "when the employer is aware that the

employee has been subjected to a continuous pattern of harassment and the employer does nothing to stop it." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084–85 (3d Cir. 1996); *see also Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 168 (3d Cir. 2001). However, "[t]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge," but rather is dependent on whether a reasonable fact finder would find the harassment has created intolerable working conditions. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992); *see Duffy*, 265 F.3d at 169-70.

Determining whether an employee was constructively discharged is a fact-specific inquiry that is not appropriate for judgment prior to discovery. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir. 2006) ("It would have been inappropriate for the District Court to decide that fact-intensive question [of constructive discharge] in the context of a 12(b)(6) motion."); *see also Levendos v. Stern Ent., Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1988) ("Constructive discharge is a heavily fact-driven determination." (internal quotation marks omitted)); *see Niehoff v. SPS Techs., Inc.*, No. 16-3301, 2016 WL 6648618, at *5 (E.D. Pa. Nov. 10, 2016) ("It is not appropriate for the court to delve into such a 'fact-intensive question' of constructive discharge on a motion to dismiss under Rule 12(b)(6)"). Based on the allegations in Chirico's amended complaint, the Court finds that he has plausibly alleged facts sufficient to show that he was subjected to a constructive discharge, and therefore an adverse action. *See Gross v. Hatboro-Horsham Sch. Dist.*, No. CV 23-0633, 2023 WL 4867423, at *8 (E.D. Pa. July 31, 2023) (declining to dismiss an age discrimination claim where plaintiff alleged he was constructively discharged because determining whether or not plaintiff actually was constructively discharged was inappropriate at the motion dismiss stage). Accordingly, the Court will decline to dismiss Chirico's claims for age discrimination at this time.

E.  Disability Discrimination Claims

Defendants aver that Chirico has not plausibly alleged he suffered disability discrimination under the ADA and PHRA. (Doc. 14, at 16-18; Doc. 19, at 2-4). Specifically, Defendants argue that Chirico has failed to allege he suffered a disability within the meaning of the ADA and PHRA because he failed to support his conclusion that his hearing loss "substantially limits or limited one or more major life activities[,]" with facts. (Doc. 14, at 17; Doc. 10, ¶ 67). According to Defendants, this is a legal conclusion that is not entitled to the assumption of truth. (Doc. 14, at 17). Chirico does not respond directly to this argument in his brief but instead provides:

> Chirico's being hard of hearing is known by the Defendants as he was diagnosed with severe hearing loss, tinnitus, and had bilateral hearing aids prior to being hired by the Police Department. As a result of his disability, Mr. Chirico speaks loudly and has done so from the beginning of his employment with Police Department.

(Doc. 18, at 6).

To adequately state a claim for disability discrimination, a plaintiff must allege facts sufficient to plausibly establish that:

> (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

An individual is considered "disabled" under the ADA if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1630.2(h) (defining "physical or mental impairment"); 29 C.F.R. § 1630.2(i) (defining "major life activities"); 29 C.F.R. § 1630.2(j) (defining "substantially limits"). A temporary or transient, nonpermanent condition cannot

be a substantial impairment under the ADA. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 765 (3d Cir. 2004). Additionally, a "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Here, at issue is whether Chirico has sufficiently plead factor two, that he has a disability, and factor three, that he was subjected to an adverse action. (Doc. 14, at 17). Regarding factor two, determining whether a plaintiff suffers from a disability is an "extraordinarily fact-intensive" inquiry that must be considered on a case by case basis. *Emory v. AstraZeneca Pharmaceuticals LP*, 401 F.3d 174, 182 (3d Cir. 2005). Although there appears to be a dearth of Third Circuit case law specifically addressing whether severe hearing loss may be considered a disability for the purpose of this action, it is clear that, in other Circuits, hearing loss may be considered a "disability." *See Perkins v. St. Louis Cty. Water Co.*, 160 F.3d 449, 449 (8th Cir. 1998) (noting that hearing impairment, depending on its severity, can be a disability under the ADA); *see also Ivy v. Jones*, 192 F.3d 514 (5th Cir. 1999) (reviewing whether hearing loss was sufficient as a disability for purpose of an ADA action). For the purposes of a motion to dismiss, Chirico does not need to prove he meets the statutory minimums for disability, but instead just needs to demonstrate a plausible claim. *See Hamilton v. Wilmac Corp.*, No. CV 18-1141, 2018 WL 4828460, at *4 (E.D. Pa. Oct. 4, 2018). With this liberal standard in mind, Chirico's amended complaint pleads facts that could demonstrate he is disabled within the meaning of the ADA because he contends he has hearing loss that is severe enough to "substantially limit[] one or more major life activities" and that Defendants were aware of his disability. (Doc. 10, ¶¶ 22, 67).

- 17 -

Regarding factor three, Chirico again alleges he suffered a constructive discharge as a result of his disability because he was subjected to a harassing environment, "retaliated against and forced to resign," and that "circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action." (Doc. 10, ¶¶ 45, 79, 80). Chirico points to a specific instance where he was accused of yelling at a coworker who, as a result, delayed his ability to get recertification of a qualification needed for his role and accused Chirico of stealing time. (Doc. 10, ¶ 45). Chirico argues that the stress of this incident and the harassment he experienced as a result exacerbated his heart issues and led to him experiencing a heart attack. (Doc. 10, ¶¶ 42, 45, 46). The heart attack combined with more ensuing harassment, including Defendant Levy's statement that he did not want Chirico to survive, allegedly contributed to Chirico's forced resignation.

As explained *supra*, because a constructive discharge determination mandates a fact intensive inquiry, dismissal on this basis would be inappropriate at the motion to dismiss stage. Accordingly, Chirico has satisfied his pleading burden for his disability discrimination claims. The Court will decline to dismiss Chirico's disability discrimination claims at this time.

## F. Retaliation Claim

Chirico alleges Defendants retaliated against him for reporting Levy's bribery to the Mayor. (Doc. 10, ¶¶ 86-89). Defendants argue because Chirico's "report" did not concern workplace discrimination, it does not fall within the purview of Title VII for the purposes of a retaliation claim. (Doc. 14, at 19). Chirico does not respond to this argument in his brief, only providing that he has "sufficiently plead . . . retaliation." (Doc. 18, at 6).

To establish a claim for retaliation, plaintiff must demonstrate "(1) [that he engaged in] protected employee activity; (2) [an] adverse [employment] action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted). A "'qualified individual' [is] a person 'who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Gardner v. Sch. Dist. of Philadelphia*, 636 F. App'x 79, 83 (3d Cir. 2015) (quoting 42 U.S.C. § 12111(8)).

At issue here is factor two, whether Chirico engaged in protected activity when he reported Levy's bribery to the Mayor. (Doc. 14, at 19). Title VII protects those who openly oppose workplace discrimination and illegal practices. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193-94 (3d Cir. 2015); *see generally Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130 (3d Cir. 2006). In any given case, whether or not an activity is protected is determined on the facts, as there is no "hard and fast rule" to identifying it. *Curay-Cramer*, 450 F.3d at 135. Complaints pertaining to matters not implicating workplace discrimination are not protected by Title VII. *See Daniels*, 776 F.3d at 193-94.

In this case, the amended complaint contains no facts to support that Chirico reported any workplace discrimination or illegal workplace action, experienced by him or otherwise. Defendant Levy's bribery was wholly separate from any discrimination Chirico or his peers may have faced in their role as a police officer. Further, Defendant Levy had not even been elected to office yet and none of the officers accepted the bribe. Accordingly, Chirico has failed to allege he was retaliated against in violation of Title VII for engaging in a protected

activity. Chirico's retaliation claim, Count V of the amended complaint, will therefore be **DISMISSED**.

G. PUNITIVE DAMAGES

Defendants, without opposition from Chirico, assert that Chirico's claims do not give rise to a punitive damages remedy. (Doc. 14, at 19). According to Defendants, "[n]either the ADEA, ADA, PHRA, nor Title VII authorize the award of punitive damages against a local agency." (Doc. 14, at 19). The Court agrees. Chirico's claim for punitive damages for his claims has no legal basis. *See Bellas v. WVHCS Retention Co.*, No. 3:11-CV-673, 2012 WL 3961227, at *6 (M.D. Pa. Sept. 10, 2012) ("Plaintiff's claim for punitive damages under the ADEA . . . is improper." "Plaintiff's claim for punitive damages under the PHRA in Count II is improper."); *see Udujih v. City of Philadelphia*, 513 F.Supp.2d 350, 358 (E.D. Pa. 2007) ("[W]hen the employer is a municipality, punitive damages are not available under Title VII.") (citing 42 U.S.C. § 1981a(b)(1)). Accordingly, Chirico's demand for punitive damages will be **DISMISSED**.

V.   **LEAVE TO AMEND**

The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); Grayson, 293 F.3d at 108. Here, Chirico has already filed an amended complaint, and does not request further amendment in the brief in opposition to Defendants' motion to dismiss.

Accordingly, the Court will not grant leave to amend, and this matter shall proceed on the amended complaint. *See Rothermel v. Dauphin Cty., Pennsylvania*, No. 1:16-CV-1669, 2018

WL 4680093, at *14 (M.D. Pa. Sept. 28, 2018) (denying leave to amend where plaintiffs did not request further amendment in Rule 12 briefing).

VI.     **CONCLUSION**

For the foregoing reasons, Defendants motion to dismiss (Doc. 13) is **DENIED IN PART** and **GRANTED IN PART**. Count V: Retaliation in Violation of Title VII, all claims against Defendants Levy in his official capacity, and Chirico's request for punitive damages are **DISMISSED**.

An appropriate Order follows.

**Dated: April 30, 2024**                          s/ Kardine Mehalchick
                                                 _____
                                                 **KAROLINE MEHALCHICK**
                                                 **United States District Judge**